# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

| | | |
|---|---|---|
| D&B RUBINSTEIN ENTERPRISES, LLC, a Florida limited liability company; ICING ON THE CUPCAKE, LLC, a Florida limited liability company; BARRY RUBINSTEIN, an individual; and DORIS RUBINSTEIN, an individual; | ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | |
| GIGI'S CUPCAKES, LLC, a Texas limited liability company; KEYCORP, LLC, a Delaware limited liability company; GIGI HOLDINGS, LLC, a Delaware limited liability company; GIGI'S FRANCHISING, LLC; a Tennessee limited liability company; GIGI'S OPERATING, LLC, a Delaware limited liability company; FUNDCORP, INC., a Delaware limited liability company; FOOD BUSINESS SERVICES, LLC, a Delaware limited liability company; SOVRANO, LLC, a Delaware limited liability company; ALAN THOMPSON, an individual; and GINA BUTLER, an individual. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Civil Action No. _____** |
| **Defendants.** | ) | |

## PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiffs D&B Rubinstein Enterprises, LLC ("D&B"), Icing on the Cupcake, LLC

("Icing"), and Barry and Doris Rubinstein (together, the "Rubinsteins") (collectively, the

"Plaintiffs"), through their counsel, Cohen, LLC, hereby submit the following Original

Complaint and Jury Demand (the "Complaint").

# I. PARTIES

1.   Plaintiff D&B Rubinstein Enterprises, LLC ("D&B") is a Florida limited liability
     company with its principal place of business in the State of Florida.

2.   Plaintiff Icing on the Cupcake, LLC ("Icing") is a Florida limited liability company
     with its principal place of business in the State of Florida.

3.   Plaintiff Barry Rubinstein is an individual residing within the State of Florida.

4.   Plaintiff Doris Rubinstein is an individual residing within the State of Florida.

5.   Defendant Gigi's Cupcakes, LLC ("Current Franchisor") is a Texas limited liability
     company with its principal office address located at 1999 Bryan Street, Suite 900,
     Dallas, Texas 75201-3140.

6.   Defendant KeyCorp, LLC ("KeyCorp") is a Delaware limited liability company with
     its principal place of business in the State of Texas.

7.   Defendant Gigi's Holdings, LLC ("Gigi's Holdings") is a Delaware limited liability
     company registered in the state of Texas and, upon information and belief, has a
     principal place of business in the State of Texas.

8.      Defendant Gigi's Franchising, LLC ("Prior Franchisor") is a Tennessee limited liability company with its principal place of business in the State of Tennessee. Upon information and belief, Gigi's Franchising, LLC has dissolved.

9.      Defendant Gigi's Operating, LLC ("Gigi's Operating") is a Delaware limited liability company and, upon information and belief, has a principal place of business in the State of Texas.

10.     Defendant FundCorp, Inc. ("FundCorp") is a Delaware corporation with, upon information and belief, a principal place of business in the State of Texas.

11.     Defendant Food Business Services, LLC ("FBS") is a Delaware limited liability company with, upon information and belief, a principal place of business in the State of Texas.

12.     Defendant Sovrano, LLC, ("Sovrano") is a Delaware limited liability company with, upon information and belief, a principal place of business in the State of Texas.

13.     Upon information and belief, Defendant Alan Thompson is a resident of the State of Tennessee.

14.     Upon information and belief, Defendant Gina Butler is a resident of the State of Tennessee.

## II. JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C.

        § 1332 as complete diversity exists between Plaintiffs and Defendants and the

        amount in controversy exceeds $75,000.

16.     Venue is proper pursuant to the United Franchise Agreement ("UFA") at ¶ 20.3.3,

        (**Exhibits B and D**), according to which the parties agreed to litigate any disputes

        arising from the UFA in the state wherein Franchisor has its principal place of

        business. While Plaintiffs do not concede as much, Defendants have argued in a

        related case—and the Court has ruled—that venue under the First UFA is proper

        in Texas.

17.     The Court has personal jurisdiction over Defendant Gigi's Cupcakes, LLC because

        it is a Texas limited liability company with its principal office address located at

        1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140.

18.     The Court has personal jurisdiction over Defendant KeyCorp, LLC because its

        principal place of business is in the State of Texas.

19.     The Court has personal jurisdiction over Defendant Gigi's Holdings, LLC because

        it is a limited liability company registered in the state of Texas and, upon

        information and belief, has a principal place of business in the State of Texas.

20.     The Court has personal jurisdiction over Defendant Gigi's Franchising, LLC because Gigi's Franchising, LLC purposefully availed itself of Texas courts' jurisdiction and waived any objections thereto under the First UFA.

21.     The Court has personal jurisdiction over Defendant Gigi's Operating, LLC because it has a principal place of business in the State of Texas and does business therein.

22.     The Court has personal jurisdiction over Defendant FundCorp, Inc. because it has a principal place of business in the State of Texas.

23.     The Court has personal jurisdiction over Defendant Food Business Services, LLC because it has a principal place of business in the State of Texas and does business therein.

24.     The Court has personal jurisdiction over Sovrano, LLC because it has a place of business in the State of Texas and does business therein.

25.     The Court has personal jurisdiction over Defendant Alan Thompson because he conducts business in the State of Texas and purposefully availed himself of the forum jurisdiction.

26.     The Court has personal jurisdiction over Defendant Gina Butler because she conducts business in the State of Texas and purposefully availed herself of the forum jurisdiction.

## III.  GENERAL ALLEGATIONS

**A.**   **TENNESSEE DEFENDANTS MISREPRESENT THE PAST AND PRESENT PERFORMANCE OF THE FRANCHISE SYSTEM REGARDING GIGI'S CUPCAKES TO INDUCE PLAINTIFFS TO ENTER INTO THE FIRST UFA.**

27.   In 2011, Ms. Rubinstein was working in a home goods store in Georgia. Near her place of employment was a Gigi's Cupcakes store, which opened at around the same time as the home goods store in which Ms. Rubinstein was working. Ms. Rubinstein observed that the store was doing well and was intrigued.

28.   In 2012, Mr. Rubinstein obtained a job in Florida, so Ms. Rubinstein moved south with him. She transferred to another store with the same home goods company to do so.

29.   Later in 2012, Ms. Rubinstein's daughter died in a car accident. Ms. Rubinstein's grief led her to leave the workforce altogether.

30.   In 2014, Ms. Rubinstein felt ready to return to the workforce. At that point, Mr. Rubinstein suggested that she start a business of her own. Ms. Rubinstein started doing research about starting a business.

31.   While doing her research Ms. Rubinstein came across Gigi's story and felt that she and Ms. Rubinstein shared the same values. She became interested, especially given that she had frequented a Gigi's Cupcake Store in Bradenton, Florida (the "McGaharan Store").

32.     In 2014/2015 the Rubinsteins reached out to Prior Franchisor to discuss the possibility of opening a franchise. Those discussions eventually led to in-person meetings in the Spring of 2015. In March 2015, the Rubinsteins flew to Nashville, Tennessee to meet with Gigi and Thompson personally.

33.     The Rubinsteins told Prior Franchisor that they were looking for a store as close to their home as possible. The McGaharan Store would have been a perfect location. In fact, the Rubinsteins specifically referenced the McGaharan Store to Prior Franchisor and what a perfect location that would be.

34.     Prior Franchisor specifically prohibited the Rubinsteins from talking to the McGaharans, telling the Rubinsteins that the McGaharans had a bad relationship with Prior Franchisor and should not be contacted. That is when the Rubinsteins began looking at other locations.

35.     Plaintiffs identified St. Armand Circle, Florida as an acceptable location. When Plaintiffs communicated their interest to Gigi, she immediately expressed excitement. This was, after all, one of her "favorite vacation" spots. Gigi told the Rubinsteins that their store would generate $ 1 million a year.

36.     During this negotiation process, Gigi and Thompson took the Rubinsteins out to dinner and treated them as though they were now "friends."

37.     Although the Rubinsteins did not have a location yet, Thompson kept pressuring them to sign a UFA. Because of this pressure, the Rubinsteins, on behalf of D&B,

signed a UFA in June 2015, paid a $35,000 fee, but did not have a location—let alone a store. **Exhibit B**. Note that although the First UFA was signed in June 2015, the cover page indicates it was effective as of May 4, 2015. In other words, Prior Franchisor wanted the First UFA signed whether or not the Rubinsteins were actually operating a franchise.

38.   In 2016, D&B and the Rubinsteins had leased a store location but no operating store yet. Unrelenting and unrepentant, Gigi began pressuring the Rubinsteins to buy the McGaharan Store even though they had not even had an opportunity to launch their own. Plaintiffs turned down the suggestion and instead focused on their store's build out and ramp up to opening.

39.   Prior Franchisor told Plaintiffs, and other franchisees, that they would not be authorized to open any store unless they had 35 people on payroll on their first day. The demand was ludicrous, generally, and physically impossible for the Rubinsteins and D&B with which to comply because the store itself would not fit 35 people.

40.   Prior Franchisor compelled the Rubinsteins and D&B to buy certain ingredients, from particular providers, in specific quantities. Some of these ingredients were not usable and stayed in the store for a year.

41.   Upon information and belief, Thompson would force franchisees to buy equipment, then buy it when they went out of business, and re-sell it to new

franchisees as though it was a "bargain." He sold equipment in this manner to the Rubinsteins. In fact, while Thompson represented that he was making the Rubinsteins "a deal" and that this was a "one-time thing" he was actually making a handsome profit on the sale. The Rubinsteins and D&B bought equipment from Thompson which they could have obtained for far less from resellers.

42.     The day before the Rubinsteins and D&B finally opened their store, Thompson and Gigi contacted the Rubinsteins and D&B and told the Rubinsteins they were selling Prior Franchisor. Gigi told the Rubinsteins and D&B that she and Thompson did not really have experience running a franchise, but the new buyer would.

43.     Had the Rubinsteins known that Prior Franchisor was about to be sold they would not have bought any franchises at all. Plaintiffs were buying into the small business vision, not into a private equity operation.

44.     Shortly thereafter, the Rubinsteins received the Franchise Disclosure Document (the "FDD").  **<u>Exhibit C</u>**.

45.     Upon information and belief, the FDD was created, read, and approved by Gigi and Thompson.

46.     Unbeknownst to the Rubinsteins, the FDD provided to them by Prior Franchisor intentionally and materially misrepresented the past, present, and future viability of the franchise's business model at the time it was presented to the Rubinsteins.

Further, Prior Franchisor fraudulently concealed negative material aspects of the franchise's business model.

47.    Specifically, and upon information and belief, Item 19 of the FDD contained a table showing net sales, cost of goods sold ("COGS"), labor, location expenses, operating expenses, and earnings before interest, depreciation, taxes, and amortization ("EBITDA") values for affiliate stores—not franchised stores—which, *inter alia*, understated the cost of labor by at least 20-33% by not taking into account reasonable salaries paid to franchise owners who work at the store.  In other words, the figures represented in the FDD assumed that owners who work in the store either work for free or take an unreasonably small salary.

48.    Next, and upon information and belief, figures representing the net sales and COGS used in the two tables in Item 19 of the FDD, were falsified and materially understated by at least 20-33%.

49.    Even assuming Prior Franchisor's figures in Item 19 were accurate calculations, upon information and belief, the figures used in these tables were misleading because Prior Franchisor "cherry picked" the best performing stores rather than using a more representative sample.

50.    Upon information and belief, some of the stores used in the Item 19 calculations were corporate-owned franchise stores that do not pay royalties, thereby further skewing the data.

51.    Upon information and belief, no total or average labor costs, COGS, operating expenses, EBITDA figures for all franchised stores appear in Item 19 of the First FDD.

52.    The intent of these misrepresentations and omissions by Prior Franchisor was to induce Plaintiffs to execute a UFA and then a second UFA with Prior Franchisor by painting a portrait of profitability that was far in excess of what prospective franchisees such as the Plaintiffs could reasonably expect to attain under the Gigi's Cupcakes business model.

53.    As further indication of Prior Franchisor's fraudulent scheme, on October 18, 2016, KeyCorp, the parent corporation which ultimately acquired Prior Franchisor, initiated a lawsuit against Gigi's Holdings and Gigi's Franchising[1] (attached hereto and incorporated herein as **Exhibit A**) asserting, *inter alia*, that Prior Franchisor misrepresented the economic health of the franchise system—Prior Franchisor had represented to KeyCorp that only five stores had threatened to close or withdraw from the franchise system, but in reality the number was 32 stores. (*See* **Exhibit A**, ¶ 25).[2]

54.    As inferred from **Exhibit A**, the number of stores KeyCorp stated as having threatened to close or withdraw from the franchise system is a significantly large

---

[1] *KeyCorp, LLC v. Gigi's Holdings, LLC, et al.*, Plaintiff's Original Complaint, Case No.: 3:16-cv-02930-L (N.D. Tex.)

[2] **Exhibit A** is attached hereto and incorporated herein.

percentage of the total number of Gigi's Cupcakes franchises in operation and indicates the financial viability of the Gigi's Cupcakes business model was, from the beginning, not as advertised to Plaintiffs.

55.   If Plaintiffs had known the true state of affairs of the Gigi's Cupcakes franchise system, Plaintiffs would have decided not to execute the First UFA in the first place and certainly not a second one.

56.   Plaintiffs, without knowledge of the falsity of the information in the FDD, did indeed rely upon the financial representations made in Item 19 of the FDD and the FDD itself when making their decision to enter into a UFA and their agreement to enter into a second UFA.

**B.   DESPITE PLAINTIFFS' BEST EFFORTS, THEIR FRANCHISING EFFORTS ARE UNSUCCESSFUL, PERMANENTLY FINANCIALLY DEVASTATING THEM.**

57.   The Rubinsteins and D&B opened their store on May 24, 2016 on St. Armand Circle (the "St. Armand Location"). Prior Franchisor insisted that the Rubinsteins & D&B have a Grand Opening six weeks after they opened.

58.   On their first day, during which the store was only open a few hours, D&B made $72. On their second day, D&B made approximately $200. Business did not get better. Prior Franchisor kept insisting that the Rubinsteins and D&B buy the "Grand Opening Package" for $850 and that they purchase giveaway prizes. By this point, the Rubinsteins had exhausted every cent they had. They had no money to make these purchases.

59.   During this time, Mr. Rubinstein was withdrawing about $10,000 a month to keep the franchise afloat. This was after the initial significant investment Mr. Rubinstein had already made into the business.

60.   KeyCorp, now in charge, raised the prices on the supplies that franchisees had to purchase. This increase was an increase of about 30% and further destroyed any profitability the franchise could have had. KeyCorp also threatened that any franchisee purchasing outside the approved vendors would be immediately terminated.

61.   Based on conversations with a distributor representative, the Rubinsteins and D&B confirmed that KeyCorp was unilaterally increasing costs and collecting profit on it from franchisees.

62.   The Rubinsteins and D&B voiced their frustrations and made no secret that their St. Armand Location was in trouble.

63.   In late 2016 and early 2017, Kevin Bauerle (who was originally in marketing with Prior Franchisor and went to work with Thompson as a broker for franchises after Prior Franchisor's sale to KeyCorp), Thompson (now acting as a broker, selling Gigi's franchises), and Michael Skelton (also a former Prior Franchisor employee) began pressuring the Rubinsteins to buy the McGaharan Location. This pressure took the form of daily phone calls to close the deal.

64.   In an attempt to salvage their investment, the Rubinsteins relented and purchased the McGaharan Location in February 2017, to be operated by a new entity, Icing. KeyCorp, now in charge (as explained further below), approved the Rubinstein's purchase of the McGaharan Location, to be operated by Icing.

65.   The Rubinsteins closed their St. Armand Location in March 2017. KeyCorp tried to collect reparations and/or damages from Plaintiffs for their closure of the St. Armand Location. In addition, in order to get out of their St. Armand Circle lease Plaintiffs had to pay $50,000.

66.   KeyCorp sent a UFA to the Rubinsteins and Icing, dated February 7, 2017. **Exhibit D** (the "Second UFA") (collectively, with the First UFA, the "UFAs"). The Rubinsteins and Icing struck several clauses of the Second UFA and returned it, signed, to KeyCorp. KeyCorp did not respond until many months later when Plaintiffs asked for a copy of the signed Second UFA. At that point, KeyCorp tried to send the Rubinsteins and Icing an original copy of the Second UFA but the Rubinsteins and Icing refused to sign it.

67.   Notwithstanding the above, KeyCorp continued to accept royalties and advertising payments for the McGaharan Location from February 2017 to March 2018.

68.   KeyCorp continued its practices of demanding that franchisees purchase from particular vendors at exorbitant costs that made profitability impossible.

69.     In April 2018 the Rubinsteins and Icing shut down the McGaharan Location.

70.     Over the course of this ordeal, Plaintiffs had taken out a Small Business Administration loan for $379,000 of which $340,000 remains unpaid to this date. In addition, the Rubinsteins sunk another $400,000 into the company. In their 2016 tax returns, Plaintiffs reported a $343,000 loss, which was after offsetting Mr. Rubinstein's regular income, indicating the loss caused by the Gigi's store was even greater. The Rubinsteins have lost their retirement, their life savings, and are having difficulty paying the SBA loan.

71.     Defendants' actions, quite literally, took Rubinsteins' life's work away from them.

C.      **KEYCORP PURCHASES PRIOR FRANCHISOR AND THE FRAUDULENT TRANSFERS CONTINUE.**

72.     Upon information and belief, on or about May 3, 2016, KeyCorp, Gigi's Holdings, and Prior Franchisor entered into an Asset Purchase Agreement in which substantially all of the UFAs entered into by Prior Franchisor were assigned to KeyCorp without novation.

73.     As articulated above, KeyCorp filed a complaint in this very Court against Gigi's Holdings and Prior Franchisor on October 18, 2016 (*see* **Exhibit A**).

74.     According to KeyCorp itself, in Paragraph 7 on page 2 of **Exhibit A**, KeyCorp was the entity that purchased the assets from Gigi's Holdings and Prior Franchisor in exchange for $6 million.

75.     Upon information and belief, KeyCorp had not previously had any experience operating a bakery franchise and possessed none of the economy of experience enjoyed by Prior Franchisor.

76.     In Paragraph 8 of **Exhibit A**, KeyCorp alleged "[i]n the months prior to closing [the] transaction, KeyCorp expended hundreds of thousands of dollars in conducting its legal and business due diligence.  This process took several months and required KeyCorp to retain additional management personnel and industry experts and advisors."

77.     KeyCorp's lawsuit against Gigi's Holdings and Prior Franchisor was settled shortly after the Complaint was filed.

78.     KeyCorp and Prior Franchisor discovered and were aware of the fraud and other wrongdoings committed against Plaintiffs.

79.     KeyCorp and Gigi's Cupcakes, LLC decided to perpetuate the fraud and other wrongdoings committed against Plaintiffs.

80.     KeyCorp and Gigi's Cupcakes, LLC are therefore specifically liable for Prior Franchisor, Gigi, and Thompson's fraud because they had notice of that fraud at or before they executed the Asset Purchase Agreement.

81.     Thompson and Gigi, the senior management of Prior Franchisor, were hired by KeyCorp and continue to work for KeyCorp.

82.     Upon information and belief, Gigi and Thompson acquired an ownership interest in Gigi's Cupcakes, LLC after the Asset Purchase Agreement, evidenced by their continuing presence and influence over operation of the Gigi's franchise system.

83.     Both Prior Franchisor and Gigi's Holdings legally dissolved after the execution of the Asset Purchase Agreement.

84.     Upon information and belief, in the Asset Purchase Agreement, KeyCorp acquired Prior Franchisor's current liabilities, accounts payable, and contracts, including its UFAs, and continues to enforce and benefit from those contracts. Gigi's Cupcakes, LLC and KeyCorp thereby assumed Prior Franchisor's liabilities to the extent necessary for the uninterrupted continuation of the Prior Franchisor's business.

85.     Gigi's Cupcakes, LLC and KeyCorp therefore assumed all of Prior Franchisor's liabilities under the "de facto merger" or "mere continuation" theories of successor liability.

86.     Upon information and belief, once Prior Franchisor's assets were purchased by KeyCorp, the assets were transferred to one or more shell companies (*i.e.* Gigi's Cupcakes, LLC and/or Gigi's Operating) wholly-owned by KeyCorp in exchange for stock of little to no value for the express and intentional purpose of hindering any future attempts by Plaintiffs to recover from the appropriate party or to defraud Plaintiffs.

87.     Thereafter, Gigi's Cupcakes, LLC took over the operations of Prior Franchisor and incorrectly held itself out to Plaintiffs to be the direct successor of the Prior Franchisor.

88.     Gigi's Cupcakes, LLC then paid FundCorp a $500,000 "loan fee" in exchange for FundCorp agreeing to guarantee Gigi's Cupcakes, LLC 's debts.   Upon information and belief, FundCorp is a wholly-owned subsidiary of KeyCorp.

89.     Since the sale of Prior Franchisor, Gigi's Cupcakes, LLC also leased property from FundCorp for approximately $100,000 per year.

90.     Since the sale of Prior Franchisor, Gigi's Cupcakes, LLC also paid, and continues to pay, KeyCorp $15,000 per month for "performing management services."

91.     Gigi's Cupcakes, LLC also paid FBS approximately $783,000 between June 2, 2016 and December 25, 2016 for "general and administrative services including payroll services."   Upon information and belief FBS is a wholly-owned subsidiary of KeyCorp, and Gigi's Cupcakes, LLC continues to pay FBS at a rate of approximately $1.4 million per year.

92.     Further, Sovrano, which upon information and belief is a wholly-owned subsidiary of KeyCorp, made payments to FBS "on behalf of" Gigi's Cupcakes, LLC for alleged services and rent that FBS provided to Gigi's Cupcakes, LLC, which Gigi's Cupcakes, LLC recorded as a debt to Sovrano.

93.    On or about December 25, 2016, Gigi's Cupcakes, LLC was operationally insolvent by at least $360,000, and upon information and belief, Gigi's Cupcakes, LLC continues to be unable to meet its financial obligations.

94.    On or about December 25, 2016, Gigi's Cupcakes, LLC's audited financial statements declared that "[Plaintiff] has sustained losses from operations during the period June 2, 2016 through December 25, 2016. [Gigi's Cupcakes, LLC] ability to meet its obligations in the ordinary course of business depends upon its ability to generate positive cash flows.  Management plans to meet its obligations in the ordinary course of business by collecting revenue and utilizing its existing debt financing.  If these sources of cash do not adequately fund current levels of operations of the Company, management will adjust the level of operations and cash expenditures to an internally sustainable level."

95.    In Gigi's Cupcakes, LLC 's most recent FDD filed with the State of Minnesota, as amended on June 9, 2017, Gigi's Cupcakes, LLC admitted that "[GIGI'S CUPCAKES, LLC'S] FINANCIAL CONDITION, AS REFLECTED IN ITS FINANCIAL STATEMENTS (SEE ITEM 21), CALLS INTO QUESTION THE [GIGI'S CUPCAKES, LLC'S] FINANCIAL ABILITY TO PROVIDE SERVICES AND SUPPORT TO [THE FRANCHISEE]." (Emphasis in original).

96.    Gigi's Cupcakes, LLC does not provide their updated FDDs to existing franchisees, and the FDDs are not easily obtainable by the public.  Plaintiffs did

not have actual or constructive knowledge that Gigi's Cupcakes, LLC was insolvent prior to this litigation.

97.     Upon information and belief, despite knowing that Gigi's Cupcakes, LLC was insolvent, KeyCorp, FundCorp, Sovrano, and FBS were attempting to extract as much value from Gigi's Cupcakes, LLC as possible to pay the insiders of KeyCorp; when the scheme became financially unsustainable, Gigi's Cupcakes, LLC attempted to offset the payments it was making to KeyCorp, FundCorp, and FBS by extracting more money from Plaintiffs and other franchisees in the form of kickbacks and markups from the franchise system's food distributors Plaintiffs were required to use (described below).

**D.     PLAINTIFFS INITIATE DISPUTE RESOLUTION PROCEDURES AND GIGI'S CUPCAKES, LLC NEGOTIATES IN BAD FAITH BY NOT DISCLOSING ITS OWN CONTINUING INSOLVENCY.**

98.     Pursuant to dispute resolution process in the UFAs, counsel for Plaintiffs sent a letter to Gigi's Cupcakes, LLC on or about July 27, 2017, demanding mediation regarding the various issues described in this Original Complaint and Jury Demand.

99.     On or about July 30, 2017, Gigi's Cupcakes, LLC, through counsel, sent a response letter to counsel for Plaintiffs asserting that Plaintiffs "mistakenly presume[d] that each of [the franchisees'] economic circumstances should have been weighed in reaching the decision to shift to the MUG agreement." The MUG agreement was

KeyCorp's way of requiring franchisees to use new food distributors that charged materially higher prices to franchisees.

100. Pursuant to the UFAs, a mediation between Gigi's Cupcakes, LLC, Plaintiffs, and other franchisees was held in Tennessee on October 23, 2017.

101. Though on October 23, 2017, Gigi's Cupcakes, LLC was likely insolvent, this significant and important fact was never disclosed to Plaintiffs or to other franchisees, which would have materially affected Plaintiffs' negotiating position.

102. Gigi's Cupcakes, LLC also attempted to convince Plaintiffs that KeyCorp was not an important factor in the resolution of Plaintiffs' claims.

103. It is clear from, *inter alia*, 1) KeyCorp's fraudulent transfer of the UFAs to Gigi's Cupcakes, LLC; 2) the extent of payments Gigi's Cupcakes, LLC is making to corporate insiders when Gigi's Cupcakes, LLC is knowingly insolvent; 3) Gigi's Cupcakes, LLC's self-disclosed insolvency in their recent FDD; 4) Gigi's Cupcakes, LLC's statement in its July 30, 2017 letter disregarding the economic circumstances of its franchisees; 5) Gigi's Cupcakes, LLC's decision to enter into the MUG contract which forces franchisees to accept necessary food and supply prices far in excess of prices available to the public at large; 6) Gigi's Cupcakes, LLC's earning of an 8% proprietary markup on already exorbitant prices offered by the MUG distributors; 7) the change in minimum order metrics by the MUG distributors which forces franchisees to place significantly larger orders to receive shipments;

8) the $75 surcharge for orders less than 30 items which, upon information and belief, is a kickback to Gigi's Cupcakes, LLC; 9) Gigi's Cupcakes, LLC's efforts to prevent franchisees from leaving the system by persuading angry franchisees that Gigi's Cupcakes, LLC's abuses were temporary when in fact the abuses are permanent; and 10) Gigi's Cupcakes, LLC's bad faith negotiating tactics during dispute resolution and not using its "Reasonable Business Judgment" but is instead attempting to maximize its own revenue for the benefit of KeyCorp and its members at the expense of all Gigi's Cupcakes franchisees, including Plaintiffs.

E.    A&M FUND USED TO RUN THE INSOLVENT COMPANY.

104.   According to Section 8 of the UFAs, D&B and Icing were each required to contribute 3% of their "Gross Business Volume" to Franchisor for inclusion in an advertising and marketing fund (referred to as the Advertising and Marketing Fund (the "A&M Fund") in the First UFA and the "MDF Program" in the Second UFA).

105.   Both D&B and Icing paid 3% of Gross Business Volume monthly to Franchisor for inclusion in the A&M Fund and MDF Program, respectively, for all months they remained in operation.

106.   According to Section 8.1 of the UFAs, Franchisor or its designee was required to "exclusively maintain and administer any program Gigi's shall undertake for

national and/or regional and/or local advertising, public relations, marketing and market research . . ."

107.    According to Section 8.5 of the UFAs, "[n]o part of the A&M Fund [and MDF] shall be used by Franchisor to defray any of its general operating expenses other than those reasonably allocable to the A&M Program [and MDF Program] or other activities as are reasonably related to the administration or direction of the A&M Program [and MDF Program]."

108.    Plaintiffs have not seen or heard any national, regional, or local advertising for Gigi's Cupcakes that were paid for by Prior Franchisor or Gigi's Cupcakes, LLC's, with the exception of one television episode of Undercover Boss which aired on or about February 2015.

109.    Upon information and belief, even if Prior Franchisor or Gigi's Cupcakes LLC have been spending the accumulated A&M Fund/MDF Fund for advertising and marketing, such advertising and marketing has been purchased only in Tennessee and Texas for the benefit of the corporate-owned stores rather than for franchisees in other states.

110.    Plaintiffs have heard of numerous instances in which other Gigi's Cupcakes franchisees requested an accounting of the A&M Fund/MDF Fund to no avail.

111.    Given the general lack of visible national, regional, or local marketing paid for by Prior Franchisor or Gigi's Cupcakes, LLC, Plaintiffs believe Prior Franchisor and

Gigi's Cupcakes, LLC have misappropriated the A&M Funds/MDF Funds in contravention of the UFAs and other applicable law.

**F.    APPLICABLE LAWS.**

112.    Pursuant to Section 20.1 of the First UFA, it states, "and any dispute between Franchisor and Franchisee shall be governed by and construed in accordance with the laws of the State of Tennessee (without regard to the application of Tennessee conflicts of law principles) and the United States of America." As a result, the laws of Tennessee govern the First UFA.

113.    Pursuant to Section 20.1 of the Second UFA, it states, "any dispute between Franchisor and Franchisee shall be governed by and construed in accordance with the laws of the State of Texas (without regard to the application of conflicts of law principles) and the United States of America. As a result, the laws of Texas govern the Second UFA.

**G.    PIERCING THE CORPORATE VEIL.**

114.    Upon information and belief, Gigi's Cupcakes, LLC is a wholly-owned subsidiary of KeyCorp.

115.    Upon information and belief, KeyCorp completely controls the finances, policies, and business practices of Gigi's Cupcakes, LLC such that Gigi's Cupcakes, LLC has no separate will or existence of its own.

116. KeyCorp used its control of Gigi's Cupcakes, LLC to commit, *inter alia*, the fraudulent transfers, breaches of contract and other wrongdoings discussed *supra*.

117. Gigi's Cupcakes, LLC is currently insolvent and unable to satisfy its legal and financial obligations.

118. KeyCorp's control of Gigi's Cupcakes, LLC proximately caused Plaintiffs' damages.

119. Therefore, this Court should "pierce the corporate veil" and hold KeyCorp liable for all Gigi's Cupcakes, LLC's wrongdoings.

## IV.  PLAINTIFFS' CLAIMS

### FIRST CLAIM FOR RELIEF

### (Deceit Based on Fraud Against Prior Franchisor, Gigi, Thompson, Gigi's Cupcakes, LLC, and KeyCorp)

120. Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

121. Prior Franchisor, Gigi, and Thompson made material misrepresentations, *inter alia*, in Item 19 of the FDD provided to Plaintiffs prior to the execution of the First UFA concerning the profitability and viability of a Gigi's Cupcakes business. Further, Prior Franchisor, Gigi, and Thompson made material misrepresentations in the FDD regarding Prior Franchisor's financial health and operational solvency.

122.   Prior Franchisor, Gigi, and Thompson's representations in Item 19 of the FDD provided to Plaintiffs concerning the profitability and viability of a Gigi's Cupcakes business and their representations concerning Prior Franchisor's financial health and operational solvency were false.

123.   Prior Franchisor, Gigi, and Thompson knew that their representations concerning the profitability and viability of a Gigi's Cupcakes business and Prior Franchisors financial health and solvency were false, or, in the alternative, Prior Franchisor, Gigi, and Thompson made these representations recklessly without knowing whether they were true or false.

124.   Prior Franchisor, Gigi, and Thompson intended that Plaintiffs rely on the misrepresentations in the FDD and execute the First UFA in reliance on those misrepresentations.

125.   Plaintiffs did not know that the misrepresentations in the FDD were false and were justified and reasonable reliance upon the truth of those representations when executing the UFA.

126.   Plaintiffs sustained damages as a result of their reliance upon the truth of the representations in the FDD.

127.   Gigi's Cupcakes, LLC and KeyCorp are jointly and severally liable for Prior Franchisor's fraud because they had notice of that fraud at or before they acquired Prior Franchisor's assets.

128.    Additionally, Gigi's Cupcakes, LLC and KeyCorp are jointly and severally liable

for all Prior Franchisor's wrongdoings as corporate successors.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of Original

Complaint and Jury Demand.

## SECOND CLAIM FOR RELIEF
### (Fraud by Concealment/Omission Against Prior Franchisor, Gigi, Thompson, Gigi's Cupcakes, LLC, and KeyCorp)

129.    Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original

Complaint and Jury Demand as if fully set forth herein.

130.    Prior Franchisor, Gigi, and Thompson concealed and suppressed accurate

financial information on Item 19 of the FDD concerning the profitability and

viability of a Gigi's Cupcakes business. Further, Prior Franchisor, Gigi, and

Thompson concealed and suppressed accurate financial information in the FDD

concerning Prior Franchisor's financial health and operational solvency.

131.    Prior Franchisor, Gigi, and Thompson, by making misleading financial

representations in the FDD, had a duty to supplement those representations with

accurate financial information to the Plaintiffs.

132.    Prior Franchisor, Gigi, and Thompson, by making representations which became

untrue or misleading had a duty to correct those representation with new

information, which they failed to do.

133.   Prior Franchisor, Gigi, and Thompson, by making partial disclosures conveyed a false impression of their financial health and performance.

134.   Prior Franchisor, Gigi, and Thompson intentionally concealed or suppressed accurate financial information in the FDD with the intent to deceive the Plaintiffs.

135.   Plaintiffs were not aware of the accurate financial information that Prior Franchisor, Gigi, and Thompson failed to disclose in the FDD and would not have purchased a Gigi's Cupcakes franchise had they known of the concealed and suppressed financial information. Plaintiffs would not have sold their franchise as they did, for the price they did, nor when they did, had they known of the concealed and suppressed financial information.

136.   As a result of the concealment and suppression of this information, Plaintiffs suffered damages.

137.   Gigi's Cupcakes, LLC and KeyCorp are jointly and severally liable for Prior Franchisor's fraud because they had notice of that fraud at or before the time they acquired Prior Franchisor's assets.

138.   Additionally, Gigi's Cupcakes, LLC and KeyCorp are jointly and severally liable for all Prior Franchisor's wrongdoings as corporate successors.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### THIRD CLAIM FOR RELIEF
**(Negligent Misrepresentation Against Prior Franchisor, Gigi, Thompson, Gigi's Cupcakes, LLC, and KeyCorp)**

139.    Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

140.    In the course of their business dealings as franchisors, Prior Franchisor, Gigi, and Thompson made material representations, *inter alia*, in Item 19 of the FDD provided to Plaintiffs prior to the execution of the First UFA concerning the profitability and viability of a Gigi's Cupcakes business. Further, Prior Franchisor, Gigi, and Thompson made material misrepresentations in the FDD regarding Prior Franchisor's financial health and operational solvency.

141.    Prior Franchisor, Gigi, and Thompson's representations in Item 19 of the FDD provided to Plaintiffs concerning the profitability and viability of a Gigi's Cupcakes business were false. Further, Prior Franchisor, Gigi, and Thompson's representations in the FDD regarding Prior Franchisor's financial health and operational solvency were false.

142.    Prior Franchisor, Gigi, and Thompson failed to exercise reasonable care in communicating the information in the FDD concerning the profitability and viability of a Gigi's Cupcakes business and Prior Franchisor's financial health and operational solvency.

143.  Prior Franchisor, Gigi, and Thompson supplied false information for the guidance of Plaintiffs in their business.

144.  Prior Franchisor, Gigi, and Thompson intended Plaintiffs to rely upon the misrepresentations in the FDD and execute the First UFA in reliance on those misrepresentations.

145.  Plaintiffs did not know that the misrepresentations in the FDD were false and were justified in relying upon the truth of those representations when executing the UFAs.

146.  Plaintiffs sustained damages as a result of their reliance upon the truth of the representations in the FDD.

147.  Gigi's Cupcakes, LLC and KeyCorp are jointly and severally liable for Prior Franchisor's negligent misrepresentations because they had notice of those misrepresentations at or before the time they acquired Prior Franchisor's assets.

148.  Additionally, Gigi's Cupcakes, LLC and KeyCorp are jointly and severally liable for all Prior Franchisor's wrongdoings as corporate successors.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### FOURTH CLAIM FOR RELIEF
**(Breach of  Contract Against Gigi's Cupcakes, LLC, and KeyCorp)**

149.    Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

150.    Plaintiffs' UFAs states, *inter alia*, that the parties shall resolve disputes through good faith negotiations and, if negotiations fail, by good faith mediation.

151.    Gigi's Cupcakes, LLC and Plaintiffs engaged in mediation, and that process failed to resolve their disputes.

152.    Defendants failed to discuss or mention their insolvency with Plaintiffs during the mediation. Further, Defendants insisted KeyCorp was not involved with Gigi's Cupcakes, LLC's operations or its disputes with Plaintiffs and other franchisees when in fact Defendants knew that KeyCorp was an important party to those disputes.

153.    Based on these actions, Gigi's Cupcakes, LLC failed to negotiate or mediate with Plaintiffs in good faith.

154.    Plaintiffs suffered damages as a result of Gigi's Cupcakes, LLC's breach.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand

### FIFTH CLAIM FOR RELIEF
**(Breach of Contract against Prior Franchisor)**

155.    Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original

Complaint and Jury Demand as if fully set forth herein.

156.    Plaintiffs and Prior Franchisor entered into the First UFA which required Plaintiffs

to contribute 3% of its "Gross Business Volume" to Franchisor for inclusion in the

A&M Fund.

157.    Plaintiffs paid 3% of its "Gross Business Volume" to Prior Franchisor in

accordance with the UFA for all months Plaintiffs remained in operation.

158.    The First UFA also states that Franchisor or its designee must "exclusively

maintain and administer any program Gigi's shall undertake for national and/or

regional and/or local advertising, public relations, marketing and market research

. . ." and that "[n]o part of the A&M Fund shall be used by Franchisor to defray

any of its general operating expenses other than those reasonably allocable to the

A&M Program or other activities as are reasonably related to the administration

or direction of the A&M Program."

159.    Prior Franchisor breached these provisions, *inter alia*, of the UFA by failing to

consistently or substantially provide national, regional, or local advertising for

Gigi's Cupcakes and by, upon information and belief, using the A&M Fund to

defray general operating expenses.

160.  Plaintiffs suffered damages because of Prior Franchisor's breaches of the contract.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### SIXTH CLAIM FOR RELIEF
### (Breach of Contract Against Gigi's Cupcakes, LLC, and KeyCorp)

161.  Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

162.  Plaintiffs and Prior Franchisor entered into a UFA on January 23, 2013, which required Plaintiffs to contribute 3% of its "Gross Business Volume" to Franchisor for inclusion in the A&M Fund.

163.  Plaintiffs paid 3% of its "Gross Business Volume" to Gigi's Cupcakes, LLC in accordance with the UFA for all months Plaintiffs remained in operation.

164.  The UFA also states that Franchisor or its designee must "exclusively maintain and administer any program Gigi's shall undertake for national and/or regional and/or local advertising, public relations, marketing and market research . . ." and that "[n]o part of the A&M Fund shall be used by Franchisor to defray any of its general operating expenses other than those reasonably allocable to the A&M Program or other activities as are reasonably related to the administration or direction of the A&M Program."

165.   Gigi's Cupcakes, LLC breached these provisions, inter alia, of the UFA by failing to consistently or substantially provide national, regional, or local advertising for Gigi's Cupcakes and, upon information and belief, by using the A&M Fund to defray general operating expenses.

166.   Plaintiffs suffered damages because of Gigi's Cupcakes, LLC and KeyCorp's breaches of the contract.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### SEVENTH CLAIM FOR RELIEF
### (Breach of Contract Against Gigi's Cupcakes, LLC, and KeyCorp)

167.   Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

168.   Plaintiffs and KeyCorp, through Gigi's Cupcakes, LLC, entered into the Second UFA by accepting the signed draft and accepting payments thereunder through its termination.

169.   As a result of this conduct, KeyCorp, Gigi's Cupcakes, LLC, Icing, and the Rubinsteins became parties to the Second UFA.

170.   The Second UFA required Plaintiffs to contribute 3% of its "Gross Business Volume" to Franchisor for inclusion in the MDF Fund.

171.   Plaintiffs paid 3% of its "Gross Business Volume" to KeyCorp, via Gigi's Cupcakes, LLC, in accordance with the Second UFA for all months Plaintiffs remained in operation.

172.   The Second UFA also states that Franchisor or its designee must "exclusively maintain and administer any program Gigi's shall undertake for national and/or regional and/or local advertising, public relations, marketing and market research . . ." and that "[n]o part of the MDF Fund shall be used by Franchisor to defray any of its general operating expenses other than those reasonably allocable to the MDF Program or other activities as are reasonably related to the administration or direction of the MDF Program."

173.   Gigi's Cupcakes, LLC breached these provisions, inter alia, of the Second UFA by failing to consistently or substantially provide national, regional, or local advertising for Gigi's Cupcakes and, upon information and belief, by using the MDF Fund to defray general operating expenses.

174.   Plaintiffs suffered damages because of Gigi's Cupcakes, LLC and KeyCorp's breaches of the contract.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

## EIGHTH CLAIM FOR RELIEF
### (Anticipatory Repudiation – Breach of Contract Against
### Gigi's Cupcakes, LLC, and KeyCorp)

175.    Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original

Complaint and Jury Demand as if fully set forth herein.

176.    Gigi's Cupcakes, LLC declared in its June 9, 2017 FDD that it was no longer

confident in its ability to support its franchisees, including Plaintiffs.

177.    The UFA specifically calls for Gigi's Cupcakes, LLC to provide certain support and

services to Plaintiffs.

178.    Gigi's Cupcakes, LLC's declaration in the June 9, 2017 FDD is an anticipatory

repudiation of the UFA, and therefore Defendants have breached the UFA.

179.    Plaintiffs have suffered damages as a result of Gigi's Cupcakes, LLC and

KeyCorp's anticipatory repudiation.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this

Original Complaint and Jury Demand.

## NINTH CLAIM FOR RELIEF
### (Civil Conspiracy Against Defendants)

180.    Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original

Complaint and Jury Demand as if fully set forth herein.

181.    Defendants are two or more persons.

182.    There was an object to be accomplished, *to wit,* selling franchises to Plaintiffs and collecting fees, proceeds from supplies, and royalties therefrom.

183.    Defendants had a meeting of the minds on the object or course of action, as follows.

184.    Gigi's Cupcakes, LLC and KeyCorp had notice of Prior Franchisor, Gigi, and Thompson's fraudulent misrepresentations. Gigi's Cupcakes, LLC and KeyCorp went on to hire Gigi, Thompson, and other key members of Prior Franchisor's management team to assist in operating the Gigi's franchise system.

185.    Gigi's Cupcakes, LLC and KeyCorp knew of Prior Franchisor, Gigi, and Thompson's fraudulent misrepresentations at or before the time KeyCorp executed the Asset Purchase Agreement

186.    Upon information and belief, at or before the execution of the Asset Purchase Agreement, Gigi's Cupcakes, LLC, KeyCorp, Prior Franchisor, Gigi, Thompson, FundCorp, FBS, and Sovrano agreed to perpetuate and benefit from the fraudulently-induced UFAs. Gigi's Cupcakes, LLC, KeyCorp, Prior Franchisor, Gigi's Holdings, Gigi, Thompson, FundCorp, FBS, and Sovrano thereby entered into a common design to perpetuate Prior Franchisor, Gigi, and Thompson's original fraud by concerted action.

187.    Gigi's Cupcakes, LLC, KeyCorp, Prior Franchisor, Gigi's Holdings, Gigi, Thompson, FundCorp, FBS, and Sovrano perpetuated Prior Franchisor, Gigi, and

Thompson's original fraud by, *inter alia*, failing to amend, rescind, or renegotiate the UFAs with Plaintiffs.

188. Gigi's Cupcakes, LLC, KeyCorp, Prior Franchisor, Gigi's Holdings, Gigi, Thompson, FundCorp, FBS, and Sovrano's respective wrongdoings all caused Plaintiffs to suffer damages.

189. Further, upon information and belief, Gigi's Cupcakes, LLC, KeyCorp, FundCorp, FBS, and Sovrano entered into a common design whereby Gigi's Cupcakes, LLC made payments to the other entities with the intent to hinder, delay, and defraud Plaintiffs of their claims.

190. These parties also knew or should have known Gigi's Cupcakes, LLC payments rendered it unable to satisfy its debts to Plaintiffs.

191. The above consisted of one or more unlawful, overt acts.

192. Plaintiffs suffered damages as a proximate result of Gigi's Cupcakes, LLC, KeyCorp, FundCorp, FBS, and Sovrano's actions.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### TENTH CLAIM FOR RELIEF
**(Unjust Enrichment Against Prior Franchisor)**

193. Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

194.   Plaintiffs conferred benefits upon Prior Franchisor in the form of franchise fees and payments pursuant to the UFA.

195.   Prior Franchisor obtained the fees and payments by fraud, duress, or the taking of an undue advantage.

196.   Prior Franchisor appreciated Plaintiffs' payments thereby wrongly securing a benefit from Plaintiffs.

197.   Prior Franchisor's acceptance of these benefits is inequitable in light of the fact that it made material misrepresentations to Plaintiffs in the FDD prior to Plaintiffs' execution of the UFA.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

<u>ELEVENTH CLAIM FOR RELIEF</u>
**(Unjust  Enrichment Against Gigi's Cupcakes, LLC, and KeyCorp)**

198.   Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

199.   Plaintiffs conferred benefits upon Gigi's Cupcakes, LLC and KeyCorp in the form of franchise fees and payments pursuant to the UFA.

200.   Gigi's Cupcakes, LLC and KeyCorp obtained the fees and payments by fraud, duress, or the taking of an undue advantage.

201.   Gigi's Cupcakes, LLC and KeyCorp appreciated Plaintiffs' payments thereby wrongly securing a benefit from Plaintiffs and Gigi's Cupcakes, LLC continues to operate the Gigi's franchise system and maintain its unsustainable business model.

202.   Gigi's Cupcakes, LLC's and KeyCorp's acceptance of these benefits is inequitable in light of the fact that Gigi's Cupcakes, LLC and KeyCorp had notice of Prior Franchisor's misrepresentations in the FDD at or before the date KeyCorp acquired the assets of Prior Franchisor, continues to employ individuals responsible for those misrepresentations, and otherwise continues to benefit from the contract that was the fruit of those misrepresentations.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

## TWELFTH CLAIM FOR RELIEF
### (Declaratory Judgment Against Gigi's Cupcakes, LLC)

203.   Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

204.   Plaintiffs seek declaratory judgment that its claims, as described herein, were unknown to it at the time they signed the Termination Agreement.

205.   As a result, Plaintiffs seek declaratory judgment that the Termination Agreement is not applicable to their claims, as contained in the Original Complaint and Jury

Demand, because the Termination Agreement did not release any of Defendants for unknown claims.

206.    Plaintiffs also seek declaratory judgment that the Termination Agreement is null and void on the basis of fraud and fraudulent inducement.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### THIRTEENTH CLAIM FOR RELIEF
### (Declaratory Judgment Against Defendants)

207.    Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

208.    Plaintiffs respectfully request declaratory judgment to determine the respective rights between the parties relating to all matters set forth in the Original Complaint and Jury Demand.

209.    The rights that Plaintiffs assert are present and cognizable, and all relevant events have occurred.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### FOURTEENTH CLAIM FOR RELIEF
**(Fraudulent Transfer pursuant to Tennessee Code § 66-3-305
Against Prior Franchisor)**

210.   Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original

Complaint and Jury Demand as if fully set forth herein.

211.   Prior Franchisor sustained losses from its operations in 2013 and 2014. Specifically,

Prior Franchisor recorded a net loss of $16,923 in 2013 and $647,655 in 2014. Upon

information and belief, Prior Franchisor sustained losses from its operations in

2015. Gigi's Cupcakes, LLC's audited financial statements for the period of June 2,

2016 through December 25, 2016 show net losses of approximately $361,935.

212.   Upon information and belief, Prior Franchisor was therefore operationally

insolvent in 2013, when it entered into the UFA with Plaintiffs, through 2016.

213.   In the years 2013 through 2016, Prior Franchisor engaged in numerous related

party transactions. Prior Franchisor distributed over $200,000 to its members in

2013 and $74,000 in 2014. Upon information and belief, Prior Franchisor made

distributions to it members in 2015.

214.   Upon information and belief, Prior Franchisor made the transfers described *supra*

with the actual intent to hinder, delay, or defraud Plaintiffs and other franchisees

in the pursuit of their claims against Prior Franchisor.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of this

Original Complaint and Jury Demand.

### FIFTEENTH CLAIM FOR RELIEF
**(Fraudulent Transfer pursuant to Tennessee Code § 66-3-305
Against Gigi's Cupcakes, LLC, KeyCorp and Gigi's Operating)**

215.    Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original
Complaint and Jury Demand as if fully set forth herein.

216.    KeyCorp executed an Asset Purchase Agreement Prior Franchisor on May 3, 2016
whereby KeyCorp acquired substantially all Prior Franchisor's assets.

217.    Gigi's Cupcakes, LLC, a wholly-owned subsidiary under KeyCorp's control, now
possess substantially all the assets KeyCorp purchased from Prior Franchisor.

218.    Upon information and belief, Gigi's Cupcakes, LLC did not provide adequate
consideration to KeyCorp for those assets.

219.    In the alternative, and upon information and belief, KeyCorp transferred the assets
to Gigi's Operating, and Gigi's Operating then transferred the assets to Gigi's
Cupcakes, LLC.  Gigi's Operating did not provide adequate consideration to
KeyCorp for those assets, and Gigi's Cupcakes, LLC did not provide adequate
consideration to Gigi's Operating for those assets.

220.    Pursuant to the express direction of Gigi's Cupcakes, LLC and KeyCorp, the Gigi's
Cupcakes franchise system does not have enough financial support to sustain
operations.

221.    Upon information and belief, KeyCorp transferred the purchased assets to Gigi's
        Cupcakes, LLC, or in the alternative to Gigi's Operating who then transferred the
        assets to Gigi's Cupcakes, LLC, with actual intent to hinder, delay, and defraud
        Plaintiffs in pursuit of their claims against KeyCorp.

        WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this
Original Complaint and Jury Demand.

### SIXTEENTH CLAIM FOR RELIEF
**(Fraudulent Transfer Pursuant to Tennessee Code § 66-3-305
Against Gigi's Cupcakes, LLC, KeyCorp, FundCorp, FBS, and Sovrano)**

222.    Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original
        Complaint and Jury Demand as if fully set forth herein.

223.    Gigi's Cupcakes, LLC sustained losses from operations from June 2 through
        December 25, 2016, and Gigi's Cupcakes, LLC's management was unsure of how
        Gigi's Cupcakes, LLC would meet its obligations in the ordinary course of
        business. Further, by June 9, 2017 Gigi's Cupcakes, LLC's financial health left it
        uncertain if it could provide support and services to its franchisees, including
        Plaintiffs.

224.    Pursuant to the express direction of Gigi's Cupcakes, LLC and KeyCorp, the Gigi's
        Cupcakes franchise system does not have enough financial support to sustain
        operations.

225.   On or about December 25, 2016, Gigi's Cupcakes, LLC was operationally insolvent by at least $360,000.

226.   During the June 2 through December 25, 2016 period, Gigi's Cupcakes, LLC entered into many related party transactions. Specifically, Gigi's Cupcakes, LLC paid FundCorp a $500,000 loan fee for FundCorp's guarantee of Gigi's Cupcakes, LLC's long-term debt and $51,136 for rent of property, Gigi's Cupcakes, LLC paid KeyCorp $105,000 in management fees, and Gigi's Cupcakes, LLC paid FBS $783,695 for "general and administrative services, including payroll serves." Gigi's Cupcakes, LLC also owes Sovrano $46,867 for payments Sovrano made to FBS for services it shared with Gigi's Cupcakes, LLC.

227.   Upon information and belief, the related entities mentioned in the previous Paragraph did not provide reasonably equivalent value in exchange for Gigi's Cupcakes, LLC's payments.

228.   Upon information and belief, Gigi's Cupcakes, LLC made the transfers described supra with the actual intent to hinder, delay, or defraud Plaintiffs and other franchisees in the pursuit of their claims against Gigi's Cupcakes, LLC.

229.   Further, Gigi's Cupcakes, LLC was and is engaged in business and transactions with its franchisees for which its remaining assets are unreasonably small in relation to the business and transactions.

230.   Upon information and belief, Gigi's Cupcakes, LLC intended to incur debts beyond its ability to pay as they became due. In the alternative, Gigi's Cupcakes, LLC reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### SEVENTEENTH CLAIM FOR RELIEF
**(False and Misleading Statements Under Tex. Bus. & Com. Code Ann. § 51.301 against all Defendants)**

231.   Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

232.   Defendants employed representations, devices, schemes or artifices to deceive Plaintiffs as purchasers.

233.   Defendants made untrue statements of material facts or omitted to state one or more material facts in connection with the documents and information required to be provided to the secretary of state or purchaser.

234.   Defendants represented that the business opportunity provided or would have provided income or earning potential without:

   a.   documented data to substantiate the representation of income or earning potential; and

b.  disclosure of such data to the purchaser when the representation was made; or

235.  Defendants made claims or representations that were inconsistent with the information required to be disclosed by Tex. Bus. & Com. Code Ann. Chapter 51 in:

a.  advertising or other promotional material; or

b.  an oral sales presentation, solicitation, or discussion between Prior Franchisor and Plaintiffs.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

## EIGHTEENTH CLAIM FOR RELIEF
**(Deceptive Trade Practices Against all Defendants Pursuant to Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. § 17.46)**

236.  Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

237.  Plaintiffs are consumers pursuant to Tex. Bus. & Com. Code Ann. § 17.50.

238.  Defendants violated the Deceptive Trade Practices Act ("DTPA") by:

a.  causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another; and

b.  failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such

information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

WHEREFORE, Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

## V. <u>PRAYER</u>

Plaintiffs pray that this Court enter its Judgment awarding Plaintiffs the following relief against the Defendants:

a.   An Order declaring the respective rights between the parties relating to all matters set forth in the Original Complaint and Jury Demand;

b.   An Order rescinding the UFA;

c.   An Order rescinding the Second UFA;

d.   An Order rescinding the Termination Agreement;

e.   Compensatory, consequential, and incidental damages;

f.   Punitive damages;

g.   Plaintiffs' attorneys' fees and costs in this matter including expert witness fees, if any;

      h.    Pre- and post-judgment interest on all amounts due and owing to Plaintiffs, including attorney's fees, if applicable; and

      i.    Such other and further relief this Court deems just and proper.

## VI.  JURY DEMAND

Plaintiffs request that a jury resolve all issues in this case properly triable before a jury.

DATED: September 7, 2018           Respectfully submitted,

                               FERGUSON, BRASWELL,
                               FRASER, KUBASTA, PC

By:    /s/ James E. Davis
        James E. Davis, #05504200
        2500 Dallas Parkway, Suite 600
        Plano, Texas 75093
        Tel: (972) 378-9111
        Email: jdavis@fbfk.law

        COHEN, LLC

By:    /s/  Jeffrey Cohen
        Jeffrey Cohen, Esq., #10876
        Anthony Garcia, Esq., #49481
        Colorado State Bank Building
        1600 Broadway, Suite 1660
        Denver, Colorado 80202
        Tel: (303) 524-3636
        Email: jcohen@cohentrial.com
        Email: agarcia@cohentrial.com
        **Attorneys for Plaintiffs**